UNITED STATES DISTRICT COURT

DISTRICT OF SOUTH DAKOTA

SOUTHERN DIVISION

| | |
|---|---|
| RYAN MICHAEL KLAVE,<br><br>              Plaintiff,<br><br>vs.<br><br>SHERIFF MIKE MILSTEAD,<br>Minnehaha County;<br>CHIEF DEPUTY SHERIFF MICHELLE BOYD,<br>Minnehaha County;<br>SHERIFF NELSON, Lincoln County;<br>DEPUTY SHERIFF JOHN DOE I,<br>Lincoln County;<br>LINDA OSBORNE,<br>Correct Care Solutions Employee,<br>Minnehaha County;<br>PAM KNOPF,<br>Correct Care Solutions Employee,<br>Minnehaha County; and<br>JEFF GROMER, Warden,<br>Minnehaha County Jail,<br><br>              Defendants. | CIV. 13-4074-KES<br><br><br>ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT |

      Defendants, Sheriff Mike Milstead, Chief Deputy Sheriff Michelle Boyd, Pam Knopf, and Jeff Gromer, move for summary judgment on plaintiff, Ryan Michael Klave's, complaint. Defendant Linda Osborne moves to dismiss the complaint for failure to formally serve her with the complaint. The complaint alleges that Klave was denied medications to treat various mental illnesses while he was incarcerated at the Minnehaha County Jail. During screening, the court construed the complaint as setting forth a claim under the Eighth

Amendment alleging deliberate indifference in the care and treatment of Klave's alleged mental health conditions. Klave has not responded to the motion for summary judgment or motion to dismiss.

## FACTUAL BACKGROUND

According to defendants' statement of undisputed material facts (Docket 26), to which Klave has not objected:[1]

Klave was a prisoner at the Minnehaha County Jail when he filed this lawsuit. He was being detained pending trial on state criminal charges. On December 6, 2013, Klave wrote to the court to give notice of his address change from the Minnehaha County Jail to the South Dakota State Penitentiary, where he is currently incarcerated. During the time that Klave was incarcerated at the Minnehaha County Jail, the county contracted with Correct Care Solutions, LLC, to oversee and provide medical and mental health care to prisoners in a manner that complied with the requirements of all state and federal laws.

Sheriff Mike Milstead was employed as the Sheriff for Minnehaha County, South Dakota. Milstead did not personally provide medical care or treatment to Klave. He was not personally involved with processing or responding to any grievances Klave might have filed complaining about his mental health care or his medications. Milstead was personally involved with processing one or two grievances Klave submitted after this lawsuit was

---

[1] Pursuant to Local Rule 56.1D, "[a]ll material facts set forth in the movant's statement of material facts will be deemed to be admitted unless controverted by the opposing party's statement of material facts."

commenced regarding the type of laundry detergent used at the jail, which grievances are not at issue in this lawsuit.

Michelle Boyd was employed as the Chief Deputy Sheriff for Minnehaha County, South Dakota. She was involved in processing only one complaint or grievance submitted by Klave, which involved laundry detergent and was not the subject matter of this lawsuit.

Jeff Gromer was employed as the warden of the Minnehaha County Jail. Gromer did not personally provide Klave with any medical or mental health care or treatment. He did review and process two complaints or grievances of Klave. Neither of them involved the mental health or medication issues that are the subject matter of this lawsuit. Both addressed a rash that Klave developed and as a result, staff began using special detergent to wash Klave's clothes.

Klave did talk to Gromer about his mental health medications. He told Gromer that he did not believe his medication was appropriate. Gromer explained to Klave that he could not order or change Klave's prescriptions. Instead, Klave needed to notify medical or mental health staff about his concerns. Gromer was advised by Correct Care Solutions and medical staff that Klave was receiving appropriate mental health care and treatment and that objectively appeared to be true.

John Erpenbach is professionally licensed and practices as a registered nurse and certified nurse practitioner. He is also certified as a qualified mental health practitioner. He specializes in psychiatry and adult psychiatry, with

expertise and training in the treatment of anxiety disorders, thought disorders, mood disorders, psychiatric evaluations, and psychiatric medical management.

Erpenbach provided mental health care and treatment to Klave through a contract with Correct Care Solutions. He responded to Klave's repeated requests for specific medications for Klave's alleged mental health conditions, including depression, anxiety, and bipolar disorder. Even though the health care providers were unable to independently confirm that Klave had, in fact, been medically diagnosed with any of the conditions that Klave complained of, the health professionals with Correct Care Solutions assumed he suffered from these conditions and treated him accordingly.

Klave specifically requested benzodiazepines. Because benzodiazepines have an extremely high risk of abuse and dependence and Klave had a history of prescription drug abuse and was facing drug charges, these medications were gradually discontinued to mitigate adverse side effects from withdrawal. Instead less addictive, but equally effective, alternative medications were prescribed in their place.

Klave refused to take alternative mental health medications. As a result, these medications were discontinued after Klave was warned this would happen. Other than Klave's subjective complaints regarding his medications, Erpenbach was not aware of any correctional officers or staff or health care providers expressing concern about Klave's mental health condition.

Klave executed an authorization allowing access to his previous medical records, including his mental health records. These records, for the time period

just a few months before his incarceration, show that Klave represented to Avera McKennan Hospital that he had been diagnosed and prescribed medications for depression, anxiety, and bipolar disorder. The psychiatrists at Avera McKennan, however, ultimately diagnosed Klave as having polysubstance abuse disorder and not the conditions Klave claimed.

In Erpenbach's professional opinion, Klave's care met the applicable standard of care in all respects. Klave did not need to receive different types of medication or amounts above what he was prescribed.

Klave was not provided ADHD medications. He never filed a grievance requesting ADHD medications and he told staff he was doing just fine without ADHD medications. The Avera McKennan records show that Klave admitted to improperly using or abusing his ADHD medications by intravenously injecting the substance. Avera McKennan did not diagnose Klave as having ADHD. As a result, Klave's ADHD prescription from a different, previous health provider was discontinued upon his incarceration.

Klave did not have a current, valid, prescription for Ambien when he was incarcerated. Nor was he determined to have a medical condition that required this medication.

Klave was prescribed and provided access to the medication Abilify while he was in jail. His condition, behavior, conduct, and subjective complaints did not require that he be prescribed the medications Ativan or Lexapro. In Erpenbach's professional opinion, Klave did not sustain any identifiable injury or harm by not being provided these particular medications.

**STANDARD OF REVIEW**

"Summary judgment is appropriate when the evidence,[2] viewed in a light most favorable to the non-moving party, demonstrates that there is no genuine issue of material fact, and that the moving party is entitled to judgment as a matter of law." *Clark v. Kellogg Co.*, 205 F.3d 1079, 1082 (8th Cir. 2000); *see also* Fed. R. Civ. P. 56(a). "Once the motion for summary judgment is made and supported, it places an affirmative burden on the non-moving party to go beyond the pleadings and by affidavit or otherwise designate specific facts showing that there is a genuine issue for trial." *Commercial Union Ins. Co. v. Schmidt*, 967 F.2d 270, 271 (8th Cir. 1992) (internal quotations and citations omitted). "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Although "the court is required to . . . give [the nonmoving] party the benefit of all reasonable inferences to be drawn from the underlying facts," *Vette Co. v. Aetna Cas. & Sur. Co.*, 612 F.2d 1076, 1077 (8th Cir. 1980), the nonmoving party may not "rest upon mere denials or allegations." *Forrest v. Kraft Foods, Inc.*, 285 F.3d 688, 691 (8th Cir. 2002). Instead, the nonmoving party must "set forth specific facts sufficient to raise a genuine issue for trial." *Id.*

Prisoners who proceed pro se are entitled to the benefit of liberal construction at the pleading stage. *Quam v. Minnehaha Cnty. Jail*, 821 F.2d

---

[2] The evidence includes the pleadings, depositions, documents, electronically stored information, stipulations, answers to interrogatories, admissions, and affidavits. Fed. R. Civ. P. 56(c).

522, 522 (8th Cir. 1987). Nonetheless, the summary judgment standard set forth in Rule 56 of the Federal Rules of Civil Procedure remains applicable to prisoners proceeding pro se. *Id.* The district court is not required to "plumb the record in order to find a genuine issue of material fact." *Barge v. Anheuser-Busch, Inc.*, 87 F.3d 256, 260 (8th Cir. 1996). Moreover, the court is not "required to speculate on which portion of the record the nonmoving party relies, nor is it obligated to wade through and search the entire record for some specific facts that might support the nonmoving party's claim." *Id.* Courts must remain sensitive, however, "to the special problems faced by prisoners attempting to proceed pro se in vindicating their constitutional rights, and [the Eighth Circuit does] not approve summary dismissal of such pro se claims without regard for these special problems." *Nickens v. White*, 622 F.2d 967, 971 (8th Cir. 1980).

## DISCUSSION

Defendants assert that Klave's claims for equitable relief were rendered moot upon his transfer to the South Dakota State Penitentiary and that Linda Osborne has never been served. Defendants Milstead, Boyd, and Gromer claim they lack sufficient personal involvement to be held liable under § 1983. Defendants further assert that they are entitled to summary judgment on Klave's Eighth Amendment claim because his mental health conditions were not sufficiently serious to warrant protection.

### I.   Klave's claims for equitable relief are moot because he was transferred to the South Dakota State Penitentiary.

At the time Klave filed this lawsuit, he was incarcerated at the Minnehaha County Jail awaiting trial on state criminal charges. After he was convicted, he was transferred to the South Dakota State Penitentiary to serve his sentence. Klave is no longer in the custody of Minnehaha County. As a result, his claims for prospective equitable, declaratory, or injunctive relief are dismissed as moot. *See Martin v. Sargent,* 780 F.2d 1334, 1337 (8th Cir. 1985).

### II.   Defendant Linda Osborne has not been served and should be dismissed pursuant to Federal Rule of Civil Procedure 4(m).

Federal courts cannot exercise personal jurisdiction over a defendant without proper service of process. *Omni Capital Int'l, Ltd. v. Rudolf Wolff & Co.,* 484 U.S. 97, 104 (1987). As a result, a district court has the power to dismiss a defendant for failure to comply with its rules. *Marshall v. Warwick,* 155 F.3d 1027, 1029 (8th Cir. 1998).

The court screened Klave's complaint on July 12, 2013, and narrowed the scope of the lawsuit to an Eighth Amendment claim of deliberate indifference based upon the alleged denial of specific mental health medications. The claim against Osborne was allowed to proceed forward. A summons was issued for service upon Osborne on July 23, 2013, but it was returned unexecuted. Osborne has not been formally served in this lawsuit.

Rule 4(m) provides in pertinent part:

> If a defendant is not served within 120 days after the complaint is filed, the court—on motion or on its own after notice to the

>   plaintiff—must dismiss the action without prejudice against that
>   defendant or order that service be made within a specified time.
>   But if the plaintiff shows good cause for the failure, the court must
>   extend the time for service for an appropriate period.

Here, Osborne filed her motion to dismiss for failure to serve the complaint on August 6, 2014, which was over a year after the complaint was screened and the summons was issued. Klave still has not served the complaint on Osborne and Klave has not responded to the motion to dismiss. It has now been over a year since the complaint was filed, and Klave has made no effort to show good cause for his failure to serve the complaint in a timely manner. As a result, the motion to dismiss with regard to Osborne is granted without prejudice.

**III.   Defendants Milstead, Boyd, and Gromer are entitled to summary judgment because they lack sufficient personal involvement to be held liable under § 1983.**

Prison officials can only be held liable under the Eighth Amendment for their own personal actions. *See Roberson v. Bradshaw*, 198 F.3d 645, 647 (8th Cir. 1999). When prison officials have not been involved in treatment decisions that were made by the medical unit staff and they lack medical expertise, the Eighth Circuit has held that the prison officials are not liable for the diagnostic and treatment decisions made by the medical staff. *See Keeper v. King*, 130 F.3d 1309, 1314 (8th Cir. 1997). The undisputed material facts as set forth previously, establish that Milstead, Boyd, and Gromer lack the necessary personal involvement to be held liable under § 1983 regarding Klave's mental health care and treatment. As a result, all three defendants are entitled to summary judgment.

### IV.    All defendants are entitled to summary judgment because Klave has failed to establish deliberate indifference to a serious mental health condition.

"[D]eliberate indifference to serious medical needs of prisoners constitutes 'the unnecessary and wanton infliction of pain' proscribed by the Eighth Amendment." *Estelle v. Gamble*, 429 U.S. 97, 104 (1976) (quoting *Gregg v. Georgia*, 428 U.S. 153, 173 (1976)). "This is true whether the indifference is manifested by prison doctors in their response to the prisoner's needs or by prison guards in intentionally denying or delaying access to medical care or intentionally interfering with the treatment once prescribed." *Id.* at 104–05. "[T]his does not mean, however, that every claim by a prisoner that he has not received adequate medical treatment states a violation of the Eighth Amendment." *Estelle*, 429 U.S. at 105; *see also Dulany v. Carnahan*, 132 F.3d 1234, 1239 (8th Cir. 1997) (quoting *Hudson v. McMillian*, 503 U.S. 1, 9 (1992)) (" '[S]ociety does not expect that prisoners will have unqualified access to health care.' ").

The deliberate indifference standard includes both an objective and subjective component. *Dulany*, 132 F.3d at 1239 (citing *Coleman v. Rahija*, 114 F.3d 778, 784 (8th Cir. 1997)). The plaintiff "must demonstrate (1) that he suffered objectively serious medical needs and (2) that the prison officials actually knew of but deliberately disregarded those needs." *Id.* (citing *Coleman*, 114 F.3d at 784). "A serious medical need is one that has been diagnosed by a physician as requiring treatment, or one that is so obvious that even a layperson would easily recognize the necessity for a doctor's

attention." *Coleman*, 114 F.3d at 784. To be liable for deliberately disregarding medical needs, "the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Farmer v. Brennan*, 511 U.S. 825, 837 (1994). Allegations of negligence will not suffice. *See Jolly v. Knudsen*, 205 F.3d 1094, 1096 (8th Cir. 2000) ("The prisoner must show more than negligence, more even than gross negligence, and mere disagreement with treatment decisions does not rise to the level of a constitutional violation.").

The issue before this court is whether Klave can establish that he suffers from one or more mental health conditions that require special treatment or specific prescription medications. While Klave claims that he suffers from anxiety, depression, bipolar disorder, and/or ADHD, his self-diagnosis is not sufficient to support a claim under the Eighth Amendment. *See Moore v. Schuetzle,* 354 F. Supp. 2d 1065, 1082 (D.N.D. 2005). Instead, the undisputed evidence shows that immediately before Klave's incarceration at the Minnehaha County Jail, he was diagnosed by mental health care providers at Avera McKennan as having polysubstance abuse disorder and not any of the conditions that Klave now claims in his complaint. Because Klave has not come forward to demonstrate with objective evidence that he in fact has been diagnosed by a physician as suffering from the mental health conditions that he alleged in his complaint, the court finds that Klave has failed to prove the objective component of the deliberate indifference

standard. Without proving this component, he cannot be successful on his claim.

Defendants are therefore entitled to summary judgment on Klave's deliberate indifference claim. Accordingly, it is

ORDERED that defendants' motion for summary judgment (Docket 24) is granted.

IT IS FURTHER ORDERED that Osborne's motion to dismiss without prejudice is granted.

Dated December 5, 2014.

                                                BY THE COURT:

                                                /s/ *Karen E. Schreier*
                                                KAREN E. SCHREIER
                                                UNITED STATES DISTRICT JUDGE